Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Bufete Alonso García, LLC<br><br>Apelante<br><br>vs.<br><br>Brenda Nieves t/c/c Brenda Nieves Vázquez<br><br>Apelada | TA2025AP00539 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br>Civil Núm.: GB2022CV01197 (201)<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece ante nos el Bufete Alonso García, LLC (BAG o apelante), quien nos solicita la revocación de la Sentencia emitida el 9 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI o foro apelado). Mediante el referido dictamen, el foro apelado declaró Ha Lugar la petición de Sentencia Sumaria presentada por la señora Brenda Nieves t/c/c Brenda Nieves Vázquez (Sra. Nieves Vázquez o apelada). En consecuencia, desestimó con perjuicio, la reclamación presentada en su contra.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, revocamos el dictamen apelado mediante los fundamentos que expondremos a continuación.

**I.**

El caso de autos tuvo su génesis el 30 de diciembre de 2022, cuando BAG presentó una Demanda de incumplimiento de contrato más daños y perjuicios en contra de la Sra. Nieves Vázquez. En esta adujo que, el 25 de julio de 2022, las partes

suscribieron un contrato de opción de compra por medio del cual la parte apelada se comprometió a vender el inmueble sito en la Urb. Luis Muñoz Rivera, 1118 Calle M, Guaynabo, Puerto Rico, por el precio fijo de $225,000.00. El 18 de junio de 2022, el apelante le hizo entrega de un cheque certificado por la cantidad de $11,250.00, en abono al precio de la compraventa. Como parte del convenio, se acordó que la opción debía ejercerse en un término de 60 días. Además, se dispuso que, si por alguna razón no se pudiera terminar algún trámite o culminar la compraventa dentro del periodo establecido, las partes podrán firmar un *addendum* en el cual se otorgaría un término adicional para finalizar el acuerdo de compraventa. Esta cláusula estaba condicionada a que, para la fecha de vencimiento del término o cercano a este, el préstamo ya hubiera sido aprobado. Finalmente, el contrato precisó que, si no se lleva a cabo el contrato de compraventa, el depósito no era reembolsable.

El apelante señaló que, el 19 de agosto de 2022, le notificó por correo electrónico a la Sra. Nieves Vázquez que el préstamo comercial había sido aprobado por el Banco Popular de Puerto Rico (BPPR). En esta misma comunicación, BAG le solicitó a la parte apelada una extensión de término, según pactado. Así las cosas, indicó que la apelada no tuvo objeción para otorgar un periodo adicional de 30 días. Más aún, alegó que la parte apelada le requirió que preparara el documento necesario para la extensión del contrato de opción de compra. Sin embargo, el 26 de agosto de 2022, la Sra. Nieves Vázquez le envió un correo electrónico al señor Alexander González Airmont, gerente de BPPR de la sucursal de Las Catalinas (Sr. González Airmont), en la cual hizo constar que, a la fecha de su comunicación, no había recibido documento alguno que evidenciara la aprobación del préstamo. En su contestación, el Sr. González Airmont le informó sobre el estatus

del referido préstamo, la documentación solicitada y la conversación sostenida mediante llamada telefónica.

Finalmente, el apelante indicó que existían unos gravámenes en la propiedad que impedían el traspaso de la titularidad. Indicó que, la parte apelada le informó que la propiedad estaba lista para su transferencia. No obstante, según la certificación del Registro de la Propiedad, emitida el 7 de julio de 2022, la misma estaba gravada por tres (3) hipotecas. Señaló que la conducta de la apelada constituyó mala fe.

Por su parte, el 15 de junio de 2023, la parte apelada presentó su Contestación a la Demanda. En síntesis, arguyó que los propios actos del apelante condujeron a la extinción del término estipulado del contrato de opción de compra. Alegó que, debido a que el apelante redactó los términos y condiciones del contrato, estaba en pleno conocimiento de que no era obligatorio extender el término del convenio mediante el *addendum*. Sobre las alegaciones de los gravámenes del Registro de la Propiedad, estableció que desconocía sobre la realidad registral, por lo que nunca proveyó información falsa. Además, indicó que cuando advino en conocimiento sobre esto, estaba dispuesta a subsanar las faltas. Por otro lado, señaló que el apelante pudo haber realizado el estudio de título previo a la configuración del contrato de opción de compra.

Luego de varios trámites procesales, la Sra. Nieves Vázquez presentó una Solicitud de Sentencia Sumaria. En esta argumentó que, no existen hechos en controversia y reiteró que la compraventa no se ejerció debido a los propios actos del apelante. Apuntó que, no existe evidencia alguna que demuestre el incumplimiento o la negligencia de su parte. Arguyó que, nunca recibió una comunicación oficial del banco, carta de precualificación o de tasación que le certificara la aprobación del

préstamo. Por otro lado, estableció que los asuntos registrales no obstaculizaban el cierre de la compraventa. Por último, indicó que el contrato establece que el depósito de $11,250.00 no era reembolsable.

Consecuentemente, el 7 de julio de 2025, BAG presentó la Réplica a Solicitud de Sentencia Sumaria, mediante la cual manifestó que este caso debía ser resuelto en un juicio plenario. Agregó que, según dispuesto en el Informe de Manejo del Caso, este se proponía a presentar el testimonio del oficial bancario responsable de procesar el préstamo. Expuso que los actos de la apelada crearon una expectativa de que se firmaría la extensión del término. Adujo que, a pesar de que los gravámenes en el Registro de la Propiedad pueden ser cancelados, los mismos deben ser a cuenta y costo de la Sra. Nieves Vázquez. Añadió que, para la aprobación del préstamo, la propiedad debía estar libre de gravámenes. Reiteró que su intención era materializar la compraventa, razón por la cual no resolvió del contrato al obtener la información del Registro de la Propiedad. Para finalizar, puntualizó que existen las siguientes controversias:

> *a. La procedencia de la devolución del depósito entregado a la demandada en abono al precio de compraventa.*
>
> *b. Si las partes estaban obligadas o no a extender el contrato.*
>
> *c. Si la demandada incurrió en conducta dolosa, fraude y si procede la imposición de daños y perjuicios.*

Atendidos los respectivos escritos sometidos por las partes, el 23 de septiembre de 2025, el TPI emitió su Sentencia Final. Por medio de esta, declaró Ha Lugar la Solicitud de Sentencia Sumaria de la apelada y, en consecuencia, desestimó con perjuicio la Demanda del caso de epígrafe. Como parte de dicho dictamen, estableció los siguientes hechos incontrovertidos:

*1. La Lcda. Belma Alonso García (Lcda. Alonso) es abogada de 18 años, ejerciendo la profesión desde el 31 de enero de 2006.*

*2. La Lcda. Alonso funge como Presidenta del BAG.*

*3. Su pareja, el Lcdo. Rosado es tesorero del BAG. Es importante mencionar que es abogado, con práctica activa.*

*4. La Lcda. Alonso admitió que es Notaria Pública.*

*5. La propiedad inmueble objeto de la presente controversia es M1118 en la Urb. Muñoz Rivera, en Guaynabo, PR.*

*6. La parte demandante aceptó que entregó cheque para separar la propiedad inmueble sin que se haya firmado contrato de opción a compraventa.*

*7. La parte demandante entregó cheque por la cantidad de $11,250.00 a la parte demandada como parte de reservar la propiedad inmueble.*

*8. La parte demandante alegó hacer gestiones de préstamo comercial a través de SBA.*

*9. En la deposición del 29 de octubre de 2024, la parte demandante definió que es una opción a compraventa. Reconoció que la persona no vende, ni grava, ni enajena la propiedad durante el término que se va establecer la opción.*

*10. La parte demandante reconoció que necesitaba 60 días, según le dijeron si era a través de un préstamo comercial SBA.*

*11. La parte demandante admitió que estuvo asesorada por su gerente comercial de confianza, el señor González. Además, admitió que el señor González le pidió que antes de firmar cualquier contrato le indicara que 60 días era tiempo razonable para un préstamo comercial a través de SBA.*

*12. La parte demandante aceptó que le añadió mayor cantidad al préstamo para mejoras que quería realizar al bien inmueble. En exceso de los $225,000.00 precio de venta.*

*13. La fecha de la solicitud del préstamo comercial para obtener el mismo que somete por primera vez al banco fue el 29 de julio de 2022. Esta fecha es relevante porque había transcurrido desde que se entregó el cheque por los demandantes del 18 de junio hasta el 29 de julio la cantidad de 41 días y conforme a la firma del contrato de opción a compraventa 34 días después de haberse firmado el contrato. La parte Demandante optó por tomarse más de 30 días para someter una solicitud de préstamo comercial cuando sabía que tardaba 60 días para su aprobación con la institución bancaria. Esta decisión no es atribuible a la parte demandada,*

*quien le separó la propiedad inmueble desde la fecha de la entrega del cheque.*

*14. La parte demandante reconoció que redactó el contrato de opción a compraventa. El término de los sesenta (60) días de duración del contrato de opción a compraventa la parte Demandada no tuvo objeción. Se firmó el contrato por ambas partes de opción a compraventa el 25 de junio de 2022 y se hizo la solicitud de préstamo comercial el 29 de julio de 2022.*

*15. En el contrato de opción de compra suscrito entre las partes se observa que en su cláusula tercera establecía que la parte vendedora (demandada) se obligaba a vender a la parte compradora (demandante) y la parte compradora se obligaba a comprar la propiedad a un precio fijo y combinado de $225,000.00. Igualmente, en dicha cláusula mencionaba que la parte compradora entregó un cheque por la suma de $11,250.00 el cual equivale al 5% de del precio de venta y dicha suma se abonaría al precio de la compraventa. También la mencionada cláusula disponía que la parte vendedora no devolvería el depósito entregado a la parte compradora si esta faltaba a las disposiciones del contrato y no ejercía la opción.*

*16. De acuerdo con el contrato de opción de compra pactado entre las partes se estableció en la cláusula cuarta un término de 60 días para el ejercicio de la opción. Dicha cláusula menciona que ese término es una condición esencial del contrato y que vencido el mismo se dará por terminado el contrato y la parte vendedora podría ofrecer en venta la propiedad a quien así determinara, y la cantidad depositaba no sería reembolsable. La mencionada cláusula también disponía que si cerca de la fecha del término la parte compradora aún está en trámites con la institución financiera pero el préstamo ya había sido aprobado las partes podrían firmar un "Addendum" o anejo para añadir tiempo adicional al término convenido si así es aceptado.*

*17. En la cláusula quinta del contrato de opción pactado entre las partes se dispuso que durante el término del contrato, la parte vendedora no podría en forma alguna vender, hipotecar, enajenar, gravar, ceder o transferir en forma alguna la propiedad objeto del contrato cuyos términos obligan a ambas partes, sus herederos, sucesores o cesionarios y que la parte compradora no podría pasar dicho contrato a terceras personas sin la autorización de la parte vendedora o su agente.*

*18. El cheque de $11,250.00 tiene fecha de 18 de junio de 2022.*

*19. Luego de la firma del contrato de opción a compraventa, la parte demandada no presentó objeción para tener acceso por la parte demandante a la propiedad inmueble sin problema para realizar las cotizaciones.*

*20. Se solicitó resolución corporativa autorizando la firma de contrato de opción a compraventa que no se ha provisto aún por la parte demandante.*

*21. La parte demandante solicitó certificación registral que se le hizo llegar desde el 7 de julio de 2022. Es importante resaltar, que apenas había transcurrido 12 días de la firma del contrato de opción a compraventa donde la parte demandante conocía de todos los asuntos de gravámenes de la propiedad inmueble, ya que fue solicitado este documento por la parte demandante, le llegó a su persona y posteriormente fue discutido con la parte demandada.*

*22. La parte demandante admitió que los gravámenes que surgen de la propiedad inmueble tenían corrección para la otorgación de la escritura de compraventa. No era un impedimento para la otorgación de esta. Tampoco hay cancelación del contrato de opción a compraventa dentro del término vigente del contrato.*

*23. La parte demandante admitió que los gravámenes por cobro de dinero se podrían eliminar del Registro de la Propiedad por solicitud de instancia por prescripción.*

*24. La parte demandante desde el 7 de julio de 2022, cuando recibió la certificación registral tenía el derecho de cancelar el contrato de opción compraventa que estaba en término y no lo ejerció porque quería comprar. No era un impedimento legal para llevar a cabo la compraventa.*

*25. Los trámites de la solicitud de préstamo comercial comenzaron para el 29 de julio de 2022. La parte demandante aceptó que para el banco comienza a decursar los 60 días de aprobación del préstamo comercial a partir de la solicitud presentada oficialmente que fue el 29 de julio de 2022.*

*26. La parte demandante reconoció que no hay impedimento legal para haberse presentado la solicitud previo al 29 de julio de 2022. La parte demandante no tenía impedimento de presentar la solicitud desde la fecha del 18 de junio de 2022 como fecha temprana o desde el 29 de junio de 2022, fecha en que se firmó el contrato de opción a compraventa, para que el término de los 60 días fuese cónsono con lo obligado en las cláusulas contractuales.*

*27. La parte demandante nunca informó a la parte demandada que había hecho su solicitud a partir del 29 de julio de 2022 al banco.*

*28. La parte demandante entregó por primera vez la solicitud de crédito comercial, estados financieros y cotizaciones el 29 de julio de 2022.*

*29. No se entregó carta de precualificación a la parte demandante el 29 de julio de 2022. Tampoco le entregó por la parte demandante a la parte demandada el documento de precalificación del préstamo comercial.*

*30. La parte demandante admitió que la parte demandada le hizo acercamiento para indicar que el contrato estaba por vencerse, la fecha fue alrededor del 17 o 18 de agosto de 2022.*

*31. La parte demandante aceptó que en el contrato en la segunda página, la parte vendedora, aquí demandada, no devolverá el depósito entregado si la parte compradora falta a las disposiciones de este contrato y no ejerce la opción de compraventa.*

*32. La parte demandante reconoció que el término de los 60 días comenzaba a decursar desde el 25 de junio de 2022.*

*33. La parte demandante admitió que solicitó los 60 días según aconsejado por el funcionario del BPPR, señor González.*

*34. La parte demandante aceptó que el término de 60 días era un término de condición esencial de ese contrato.*

*35. La parte. demandante reconoció que vencido el término, se da por terminado el contrato.*

*36. La parte demandante admitió que transcurrido el término se dará por terminado el contrato y que vencido el contrato la parte vendedora puede ofrecer la propiedad inmueble en venta a quien lo determine y la cantidad depositada no será reembolsable.*

*37. Del contrato se deduce que la opción de compraventa es ejercerlo para llevar a cabo la compraventa.*

*38. La parte demandante trató de definir que si se había aprobado un préstamo por la institución financiera podrán firmar un "Addendum" o anejo para añadir tiempo adicional. La suscribiente indica cuando se le notifica oficialmente por el banco. Solo se limitó a decir que fue un correo electrónico enviado por el señor González, no una notificación del banco oficialmente.*

*39. La parte demandante aceptó que nunca se le envió a esta una carta oficial del banco expresando que había sido aprobado el préstamo comercial. Máxime cuando la parte demandante conocía que la parte demandada tenía la postura de no extender el contrato de opción a compraventa. La parte demandada había separado esta unidad desde que se le entregó el cheque por $11,250.00, previo a firmar el contrato de opción a compraventa por las partes. A pesar de las dos fechas: la parte demandante alega que se lo entregó el 15 o 16 de junio de 2022, el cheque dice que la fecha de expedición es el 18 de junio de 2022.*

*40. La parte demandante reconoció que no había obligación de firmar un "Addendum" al contrato; solo*

*dice que podrá añadir un contrato a término convenido por acuerdo entre las partes.*

*41. La parte demandante admitió que el firmar un "Addendum" tiene que ser aceptado por ambas partes. Nunca se firmó "Addendum".*

*42. La parte demandante aceptó que las expresiones de la señora Nieves es que el caso no estaba parado por ella.*

*43. La parte demandante reconoció que el préstamo y el término de los 60 días comenzaba a transcurrir desde el 29 de julio y que la fecha del 24 de agosto no había transcurrido el término para que se lo aprobase. Esta fecha era el vencimiento del término de los 60 días para ejercer la opción de compraventa.*

*44. La parte demandante admitió que no se hizo tasación de la estructura.*

*45. La parte Demandante aceptó que la parte demandada le separó la propiedad inmueble desde el 18 de junio de 2022 y que transcurrióa la fecha del 24 de agosto de 2022 el término de 68 días que la propiedad estuvo separada a favor de la parte demandante.*

*46. La parte Demandante reconoció que la solicitud tardía presentada ante el BPPR había transcurrido más de 30 días.*

*47. La parte Demandante admitió que sabía de los gravámenes registrales desde el 7 de julio de 2022 y que no fue ocultado por la parte demandada.*

*48. La parte demandante aceptó que adquirió otra propiedad inmueble a través de un contrato de arrendamiento. La parte demandante reconoció que su nueva oficina es en Terrazas de Guaynabo, calle Las Flores H-26, Guaynabo, PR.*

*49. La parte demandante admitió que el dolo y el fraude contractual es por los gravámenes que surgió del estudio de título y que tenía conocimiento de ello desde el 7 de julio de 2022. La parte demandante le informó los mismos a la parte demandada. La parte demandante decidió no cancelar el contrato, no rescindió el contrato que estaba dentro del término porque reconoció que los mismos tenían solución. El dolo es un hecho oculto por una de las partes mientras que el fraude contractual es un acto de ocultar información a sabiendas y conciencia de defraudar a una de las partes. La parte demandante no puede ir en contra de sus propios actos.*

En desacuerdo, el 8 de octubre de 2025, el apelante presentó una Solicitud de Reconsideración a la Sentencia Sumaria en la cual arguyó que, la prueba presentada en su oposición derrotó la

solicitud de la apelada, toda vez que demostró que persisten hechos en controversia que impedían la disposición del pleito sumariamente.

El 16 de octubre de 2025, el TPI declaró No Ha Lugar la Moción de Reconsideración presentada por BAG.

Aun inconforme con la determinación, el apelante acudió ante este foro mediante el recurso que nos ocupa, imputando la comisión de los siguientes errores:

*Primer Error: Erró el TPI al desestimar la demanda mediante sentencia sumaria, a pesar de la existencia de controversias reales y materiales sobre hechos esenciales y pertinentes que requieren el examen de prueba, en un claro abuso de discreción.*

*Segundo Error: Erró el TPI al reconocer teóricamente el principio de la buena fe, citando artículos pertinentes y jurisprudencia aplicable; sin embargo, omitió aplicarlo a los hechos del caso.*

*Tercer Error: Erró el TPI al interpretar que BAG no ejerció la opción de compra dentro del término del contrato de opción de compra.*

*Cuarto Error: Erró el TPI al determinar como admisión de parte de BAG lo que fue una lectura de partes del texto del contrato en cuanto a que "no se le devolvería el depósito entregado si la parte compradora falta a las disposiciones de este contrato y no ejerce la opción de compraventa; así como también que el término de los 60 días pactado en el contrato comenzaba a decursar desde el 25 de junio de 2022, que dicho término era una condición esencial del contrato y que vencido el mismo se daba por terminado el contrato"; cuando la prueba que obra en el expediente demuestra que BAG no incurrió en incumplimiento, sino que obtuvo el financiamiento dentro del término pactado y ejerció la opción oportunamente.*

*Quinto Error: Erró el TPI al determinar, sin prueba alguna en apoyo de ello, que la postura de la apelada era no extender el contrato de opción de compra, que la apelada no tenía una obligación de firmar un "Addendum" al contrato, y que para proceder con dicha firma tenía que ser aceptado por ambas partes; cuando la prueba que obra en el expediente demuestra que ante la solicitud de BAG de extender el contrato la apelada expresó no tener inconveniente, ofreció una fecha de extensión y solicitó que se preparara el documento a tales efectos.*

*Sexto Error: Erró el TPI al determinar que BAG tuvo acceso a la propiedad inmueble para realizar sus cotizaciones, que la gestión (del préstamo) la realizó tardíamente y al computar equivocadamente que una vez solicitado el préstamo comercial al banco el 29 de*

*julio de 2022 era que empezaba a decursar el término de 60 días para la aprobación del mismo; que ello contribuyó a que no se pudiera ejercer la opción en el término convenido en el contrato; cuando la prueba que obra en el expediente demuestra que el préstamo fue aprobado en breve tiempo y que BAG le manifestó indubitadamente a la apelada su determinación de comprar; todo ello dentro del término original del contrato.*

*Séptimo Error: Erró el TPI al determinar como fundamento para desestimar la demanda que BAG conocía todos los gravámenes del inmueble objeto de litigio y nunca vio como impedimento para la otorgación de la compraventa la existencia de dichos gravámenes[,] ya que entendía que los mismo tenían corrección mediante la eliminación en el Registro de la Propiedad por solicitud de instancia por prescripción.*

*Octavo Error: Erró el Tribunal al determinar como fundamento para desestimar la demanda que BAG nunca informó a la apelada que había hecho la solicitud de préstamos comercial al banco para el 29 de julio de 2022, que nunca le entregó una carta de precalificación y que nunc se le envió de parte del banco una carta oficial a la apelada que estableciera la aprobación del préstamo comercial; cuando ninguno de estos documentos forman parte de los términos y condiciones del contrato suscrito entre las partes.*

*Noveno Error: Erró el TPI al determinar sumariamente, sin examinar los testigos anunciados por BAG ni la prueba documental que obra en el expediente que a la fecha del vencimiento del término para ejercer la opción, no se había aprobado préstamo comercial alguno y que el contrato no se concretó por acciones atribuibles a BAG, por lo que la apelada no incurrió en dolo ni fraude contractual y por lo tanto no le ocasionó daños a BAG ni estaba obligada a devolver el depósito.*

El 14 de noviembre de 2025, emitimos una *Resolución* en la que otorgamos a la apelada un término de 20 días, a vencer el 3 de diciembre de 2025, para expresarse en torno al recurso presentado. Transcurrido el término sin la comparecencia de la Sra. Nieves Vázquez, damos por perfeccionado el recurso y procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**A.**

La sentencia sumaria es el mecanismo adecuado para resolver aquellos casos que no ameritan la celebración de un juicio por no existir duda sobre hechos esenciales. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Lugo Montalvo v. Sol Meliá*

*Vacation*, 194 DPR 209, 225 (2015). Este recurso propicia la solución justa, rápida y económica de las controversias. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019). Es decir, permite la ágil disposición de los casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022).

Ahora bien, el mecanismo de sentencia sumaria no aplica a todos los escenarios. Su concesión corresponde cuando: (1) existen hechos materiales no controvertidos, (2) el promovido no puede prevalecer ante el derecho, y (3) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

A esos efectos, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, faculta la presentación de una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García, supra*, a la pág. 679.

Cónsono con lo anterior, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción y su oposición. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). En particular, el inciso (a) de la precitada disposición reglamentaria establece las siguientes formalidades que debe exhibir la solicitud de sentencia sumaria:

*(1) Una exposición breve de las alegaciones de las partes;*

*(2) los asuntos litigiosos o en controversia;*

(3) *la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*

(4) *una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*

(5) *las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*

(6) *el remedio que debe ser concedido.* 32 LPRA Ap. V, R. 36. 3(a).

Por su parte, quien presente el escrito de oposición a la sentencia sumaria también tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Oriental Bank v. Caballero García, supra*, a la pág. 680. Así que, no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. 32 LPRA Ap. V, R. 36.3(c). Por ello, no debe asumir una actitud pasiva ni descansar en las aseveraciones o las negaciones. *Íd.*; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018).

Al contrario, la parte opositora debe establecer aquellos hechos controvertidos de la siguiente manera:

*En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón, 204*

DPR 20, 44 (2020); *Roldán Flores v. M. Cuebas et al., supra,* a la pág. 667.

No obstante, es menester explicar que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia, no implica que la moción de sentencia sumaria procederá automáticamente, si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 351 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 337 (2021). Al constituir un remedio discrecional extraordinario, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911 (1994).

De presentarse oportunamente ambos escritos, el foro primario puede adoptar el procedimiento dispuesto en la Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.6, si el caso lo amerita. Este precepto reglamentario habilita el siguiente trámite:

> *Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración concediéndole a la parte promovida un término razonable para que pueda obtener declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia, o dictar cualquier otra orden que sea justa.*

Cabe señalar que, esta regla permite que el promovido por una moción de sentencia sumaria, obtenga la oportunidad adecuada para apoyar los hechos esenciales que justifican su oposición. *García Rivera et al. v. Enríquez,* 153 DPR 323, 339 (2001). No obstante, el juzgador de los hechos debe tomar aquellas medidas necesarias para garantizar que no se recurra a la Regla 36.6, *supra,* como un ardid para demorar la solución final del

asunto. *Íd.*, a la pág. 340. Véase, también, *Pérez v. El Vocero de P.R.*, 149 DPR 427, 449 (1999).

Explicado lo anterior, ahora conviene discutir cuándo procede dictar sentencia sumaria. En esa dirección, el foro primario debe adoptar el siguiente análisis a la luz de la prueba ante su consideración:

> *[E]l tribunal podrá dictar sentencia sumaria si de "las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, proceda dictar sentencia sumaria a favor de la parte promovente". BPPR v. Cable Media, supra; Lugo Montalvo v. Sol Meliá Vacation, supra,* a la pág. 225.

Así pues, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión*, 178 DPR 200, 210 (2010); *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). Los documentos presentados deben analizarse de la forma más favorable para la parte promovida, concediéndole así el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

Como regla general, no es aconsejable dictar sentencia sumaria si surgen asuntos de credibilidad que ameritan celebrar un juicio. Aun así, el Tribunal de Puerto Rico ha validado la aplicación de este mecanismo si no hay controversias esenciales sobre hechos materiales:

> *[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994).* **Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en**

> ***reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales***. *Ramos Pérez v. Univisión, supra,* a la pág. 219. (Énfasis nuestro).

Efectuado ese análisis, el tribunal podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria". *Birriel Colón v. Econo y otro, supra,* a la pág. 91; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* a la pág. 337.

Si una parte resulta inconforme con el dictamen de sentencia sumaria tiene derecho a recurrir a la etapa apelativa. En estos casos, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024); *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Es decir, ostentamos la facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al., supra,* a la pág. 679. No obstante, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015). Ello, pues, carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que esa tarea corresponde al foro primario. *Íd.,* a la pág. 115; *Vera v. Dr. Bravo,* 161 DPR 308, 335 (2004).

**B.**

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1063 del Código Civil, 31 LPRA

sec. 8984. Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado. Art. 1233 del Código Civil, 31 LPRA sec. 9754. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1237 del Código Civil, 31 LPRA sec. 9771. Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000).

En tal sentido, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1236 del Código Civil, 31 LPRA sec. 9757. En Puerto Rico rige el principio de libertad de contratación o autonomía de la voluntad, recogido en el Art. 1207 del Código Civil, que dispone que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA sec. 3372. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido, y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

En lo concerniente al caso ante nos, el contrato de opción a compra es "el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal." *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002) citando a: *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571 (1989). Los elementos esenciales de este

tipo de contrato son los siguientes: (1) el optante tiene la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación de su parte; (2) dicha concesión es exclusiva; (3) se establece un plazo para ejercitar la opción, y, por último, (4) la única condición es la voluntad del optante. *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 722 (2001).

A tono con estos elementos, el Tribunal Supremo ha expresado que: "[a] pesar de ser un contrato consensual, la opción de compra es un contrato unilateral, porque el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquél así lo decide." *Íd.* Así pues, el optatario viene obligado a no incurrir en actuaciones voluntarias, negligentes o dolosas que frustren la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. *Mayagüez Hilton Corp. v. Betancourt, supra,* a la pág. 250. De incurrir en alguna de las actuaciones antes descritas, el prominente "incurrirá en responsabilidad contractual y el optante perjudicado podrá interponer una acción indemnizatoria contra el concedente que frustró o perjudicó el ejercicio de la facultad de optar". *Íd.*

Finalmente, cabe resaltar que el contrato de opción por ser de naturaleza transitoria puede ser principal o un pacto accesorio a otro, como, por ejemplo, a un contrato de compraventa, sociedad, financiamiento, arrendamiento de cosas y servicios. *Íd.,* a la pág. 246-247, citando a: *Atocha Thom McAn, Inc. v. Registrador,* 123 DPR 571 (1989) y J. Torres Lana, Contrato y Derecho de Opción, 2da ed., Madrid, Ed. Trivium, 1987, a la pág. 98.

### III.

Según revela el tracto procesal, la Sentencia cuya revocación se solicita fue dictada al amparo de la Regla 36 de Procedimiento Civil, *supra.* Por tanto, y de conformidad con lo resuelto por

nuestro Tribunal Supremo en el caso de *Roldán Flores v. M. Cuebas et al., supra,* nos compete determinar, de manera inicial, si las partes cumplieron con los requisitos necesarios que dimanan de la regla procesal antes mencionada, de modo que podamos entonces considerar las mociones presentadas.

Al examinar la Solicitud de Sentencia Sumaria presentada por la Sra. Nieves Vázquez, juzgamos que, ésta cumplió con los requisitos esbozados en la Regla 36.3 (a) de Procedimiento Civil, *supra.* En su moción incluyó una lista de hechos incontrovertidos, apoyados en la transcripción de la deposición realizada a la señora Belma Alonso García (Sra. Alonso García), copia del cheque emitido el 18 de junio de 2022, certificación registral, el contrato de opción de compra y otros documentos. Además, detalló cuáles son las controversias de derecho a ser resueltas por el foro primario.

Por otro lado, la Réplica a Solicitud de Sentencia Sumaria presentada por la apelante, cumplió sustancialmente con los requisitos que le impone la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b), cuestionando los hechos incontrovertidos propuestos por la apelada mediante la inclusión del contrato de opción de compra, correos electrónicos, mensajes de *WhatsApp*, contestación a interrogatorios y la deposición de la Sra. Nieves Vázquez, entre otros documentos.

Superada las formalidades de la regla, corresponde entonces verificar si la parte promovente de la Solicitud de Sentencia Sumaria logró establecer los hechos materiales que propuso como incontrovertidos, con la prueba documental que incluyó para sostenerlos, o si el apelante los impugnó con la debida documentación. De esto se sigue que, si determináramos que persisten hechos en controversia, la única vía procesal posible sería la de remitir el asunto nuevamente al TPI para que se dilucide mediante juicio en su fondo, sin que nos pronunciemos

sobre el derecho aplicable a los hechos a ser dirimidos.  Luego de este análisis, podremos considerar cualquier asunto de derecho presentado.

Según se desprende del expediente, no existen controversias sobre los siguientes hechos:

1. Las partes otorgaron un contrato de opción de compra el 25 de junio de 2022.[1]

2. Previo a la firma de este contrato, BGA entregó un cheque de $11,250.00, el 18 de junio de 2022, el cual posteriormente se abonaría al precio de la compraventa.[2]

3. El contrato establece un término de 60 días para que se perfeccionara el contrato de compraventa por la cantidad de $225,000.00.[3]

4. La cláusula cuatro del acuerdo dispone que:

   *El término de esta opción, cuyo término es condición esencial a este contrato, será de 60 días, vencido el referido término, se dará por terminado este contrato y LA PARTE VENDEDORA podrá ofrecer en venta la propiedad a quien así determine y la cantidad depositada no será reembolsable. Si cerca la fecha del término, la PARTE COMPRADORA aún está en trámites con la institución financiera pero ya ha sido aprobado el préstamo las partes podrán firmar un ADDENDUM o anejo para añadir tiempo adicional a término convenido si así es aceptado.[4]*

5. Luego de varias visitas de la apelante a la propiedad, eventualmente el 29 de julio de 2022, solicitó el préstamo comercial SBA a través del BPPR.[5]

6. Más adelante, el 19 de agosto de 2022, cercano al vencimiento del término de opción de compra, el apelante le notificó a la Sra. Nieves Vázquez que el préstamo había sido aprobado y le requirió una serie de documentos que debía enviarle al banco.[6]

7. Además, le solicitó la extensión del término conforme a lo estipulado en su contrato.[7]

8. Por su parte, la apelada le contestó en la misma fecha que: *"En efecto, de ser necesario y como te había comentado; no tengo problema con extender el*

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada 69, Anejo 9.
[2] SUMAC TPI, Entrada 64, Anejo 2.
[3] SUMAC TPI, Entrada 69, Anejo 9.
[4] *Íd.*
[5] SUMAC TPI, Entrada 64, Anejo 3.
[6] SUMAC TPI, Entrada 69, Anejo 2.
[7] *Íd.*

*contrato mediante addendum por otros 30 días adicionales".*[8]

9. El 24 de agosto de 2022, Sra. Alonso García le comunicó a la Sra. Nieves Vázquez su disponibilidad para la firma de la extensión del término.[9] Asimismo surge en las siguientes fechas: 23 de agosto de 2022,[10] 24 de agosto de 2022,[11] 25 de agosto de 2022.[12]

10. El Sr. González Airmont le envió un correo electrónico a la Sra. Nieves Vázquez en el cual recolectó la información intercambiada, el 24 de agosto de 2022, mediante llamada telefónica. Además, le notificó que el préstamo comercial de SBA de la Sra. Alonso García se aprobó el 18 de agosto de 2022.[13]

Conforme a lo antes expresado, el foro primario determinó que no existía controversia alguna y declaró Ha Lugar la Solicitud de Sentencia Sumaria presentada por la parte apelada. Concluyó que, esta no se obligó a firmar el *addendum* y que fueron los propios actos de la apelante los que impidieron que se ejercitara su opción a compra. Además, puntualizó que, nunca se le hizo entrega a la Sra. Nieves Vázquez de algún documento bancario que evidenciara la aprobación del préstamo comercial. Infirió que, al hacer la solicitud de préstamo de manera tardía, el mismo sería aprobado en una fecha posterior al vencimiento del término del contrato. Conforme a ello determinó que, para el 24 de agosto de 2022, no se aprobó préstamo comercial alguno.

La Sra. Nieves Vázquez arguye que, el contrato de opción no se ejercitó a tiempo por las gestiones tardías del apelante. Además, estableció que, ante su expresión de posibilidad de firmar una extensión, esta no tenía la necesidad de firmarlo. Más aun, al cuestionar sobre la evidencia acreditativa de la aprobación del préstamo. Por otro lado, BAG argumenta que el préstamo se aprobó dentro del término de la opción de compra. Razón por la

---

[8] *Íd.*
[9] *Íd.*, Anejo 13.
[10] *Íd.*, Anejo 5. a la pág. 14
[11] *Íd.*, a las págs. 16-17; Anejo 13.
[12] *Íd.*, Anejo 5. a las págs. 17-18.
[13] *Íd.*, Anejo 12.

cual le solicitó a la partea apelada extender el término, según pactado. Inclusive, señaló que los actos de la Sra. Nieves Vázquez crearon una expectativa para la continuación del periodo por 30 días adicionales.

Ahora bien, ante la diferencia en posturas, pareciera sumamente clara la existencia de un hecho en controversia sustancial entre las partes. **De la evidencia presentada por ambas partes, se desprenden varias incongruencias que demuestran la existencia de hechos en controversia, los cuales son materiales para determinar si, en efecto, el préstamo de SBA se aprobó dentro del término del contrato de opción.**

Por una parte, la apelada alega que, en su conversación con el Sr. González Airmont, este le informó que el préstamo no había sido aprobado.[14] Inclusive, la Sra. Nieves Vázquez aduce que también le indicó que contaba con toda la información necesaria para tramitar el préstamo.[15] Sin embargo, de las comunicaciones cursadas hacia la Sra. Nieves Vázquez, surge que se le indicó en más de una ocasión que el préstamo se aprobó el 19 de agosto de 2022.[16] En estos mismos mensajes se le hizo constar sobre la falta de los documentos solicitados.[17] Además, el apelante expresó en varias ocasiones la disponibilidad del Sr. González Airmont, representante de BPPR, y del señor Neftalí Rosado para testificar sobre la controversia que nos ocupa.

Es menester señalar que, la parte apelada reconoció que le notificó a la Sra. Alonso García la posibilidad de firmar el *addendum*.[18] A pesar de esto, la Sra. Nieves Vázquez argumenta que, nunca se le hizo ningún acercamiento para firmar dicho

---

[14] *Íd.*, Anejo 11, a la pág. 23, líneas 15-17; a la pág. 47, líneas 4-8; a la pág. 75, líneas 8-10.
[15] *Íd.*, a la pág. 75, líneas 4-5.
[16] *Íd.*, Anejo 2 y Anejo 12.
[17] *Íd.*
[18] *Íd.*, Anejo 11, a la pág. 22, líneas 5-9.

documento.[19] Igualmente, arguye que tampoco se le proveyó un seguimiento sobre las gestiones realizadas para obtener la aprobación del préstamo para adquirir la propiedad.[20] En cambio, del expediente surgen varios mensajes de texto y correos electrónicos que evidencian los acercamientos de la Sra. Alonso García para la firma de la referida extensión de término.[21] Además, en estos constan algunas de las visitas realizadas a la propiedad para las cotizaciones relacionadas a la aprobación del préstamo comercial.[22]

Por otra parte, de la deposición de la Sra. Nieves Vázquez surge que, su intención de vender la propiedad fue tanta que, enfatizó que no podía otorgar el contrato de opción de compra por un término mayor de 60 días.[23] Nos llama la atención que, la apelada expresó que, al momento de sus conversaciones con el apelante, recibió una oferta de compra por la cantidad de $200,000.00 en efectivo.[24] Además, le verbalizó que tenía varias personas interesadas en adquirir la propiedad.[25]

De igual forma, surge que la Sra. Nieves Vázquez manifestó que, de haber sabido desde un principio que los préstamos de SBA tardaban mucho, esta no hubiera otorgado el contrato de opción de compra.[26] Asimismo, expresó que tenía un conocimiento básico sobre este tipo de préstamos comerciales, dado a que esta no es su área de *expertise*.[27]

Consecuentemente, la apelada expresó que, la cláusula referente a la extensión del periodo era únicamente si los trámites financieros estaban en la etapa de cierre, solo así firmaría el

---

[19] *Íd.*, Anejo 11, a la pág. 62, líneas 21-22.
[20] *Íd.*, Anejo 11, a la pág. 29, líneas 16-24.
[21] *Íd.*, Anejo 5. a las págs. 14; 16-18; Anejo 13.
[22] *Íd.*, Anejo 5. a las págs. 6 y 8.
[23] *Íd.*, Anejo 11, a la pág. 54, líneas 18-21.
[24] *Íd.*, líneas 9-27.
[25] *Íd.*
[26] *Íd.*, a la pág. 53, líneas 24-25; a la pág. 54, líneas 1-4.
[27] *Íd.*, a la pág. 54; líneas 22-25; a la pág. 55, líneas 1-7.

referido *addendum.*[28]  La apelada aceptó que, el contrato establece la extensión del término, condicionado a la aprobación del préstamo.[29]

Según discutido anteriormente, dado a que aún continua un hecho en controversia, resolvemos que erró el foro primario al disponer del presente caso por la vía sumaria.  Estos hechos materiales son determinantes al momento de evaluar si BAG cumplió con las condiciones del contrato, lo cual habilitaría la posibilidad de la extensión del término.  Una vez resuelto, entonces el tribunal podrá dirimir el resto del pleito, incluyendo los actos afirmativos y expectativas de las partes en cuanto a la firma del *addendum.*  En otras palabras, se puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.  En consecuencia, el caso de autos debe dilucidarse mediante juicio plenario.

## IV.

Por los fundamentos antes expuestos, los cuales hacemos formar parte de esta Sentencia, revocamos el dictamen apelado. Se devuelve el caso al Tribunal de Primera Instancia, Sala de Guaynabo, para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] *Íd.,* a la pág. 55, líneas 11-23; a la pág. 56, líneas 5-10.
[29] *Íd.,* a la pág. 57; líneas 17-21.